Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| OMAR MERCADO VÁZQUEZ<br><br>RECURRIDO<br><br>V.<br><br>MUNICIPIO AUTÓNOMO DE CATAÑO Y OTROS<br><br>PETICIONARIOS | TA2025CE00713 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: CT2021CV00064<br><br>Sobre: Cobre de Dinero Ordinario |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de diciembre de 2025.

Comparecen el Municipio de Cataño (el Municipio), el Sr. Edwin Rivera Martínez (señor Rivera Martínez o el Comisionado), el Sr. Juan J. Torres González (señor Torres González o el Teniente Torres), el Sr. Luis A. Acosta Alago (señor Acosta o Tnte. Acosta), y el Sr. Javish Collazo (señor Collazo o Director de Seguridad) (en conjunto, parte peticionaria) y solicitan la revocación de la *Resolución* emitida el 6 de mayo de 2025, por el Tribunal de Primera Instancia, Sala de Bayamón, (TPI o foro primario), notificada el 7 de mayo de 2025. Mediante la referida *Resolución* el foro primario declaró *No Ha Lugar* la *Solicitud de Sentencia Sumaria* presentada por la parte peticionaria en la que solicitó la desestimación sumaria de la Demanda en daños y perjuicios presentada en su contra por el Sr. Omar Mercado Vázquez (señor Mercado Vázquez o el recurrido).[1]

Por los fundamentos que expondremos a continuación, denegamos la expedición del auto de *certiorari* solicitado por la parte peticionaria.

---

[1] *Véase* Entrada Núm.135 de SUMAC TPI en el caso Civil Núm. CT2021CV00064.

I.

El 16 de mayo de 2021, el señor Mercado Vázquez, presentó "Demanda" sobre daños y perjuicios en contra de la parte peticionaria, que incluyó tres (3) causas de acción. La Demanda fue presentada en contra del Municipio de Cataño y otros funcionarios en su carácter personal y oficial. Allí, el recurrido alegó un esquema de persecución ejercido en su contra como resultado del ejercicio válido de inquirir sobre la validez y la seguridad de la forma en que se convocó y se llevó a cabo el procedimiento de administración de las pruebas del COVID-19. El señor Mercado Vázquez alegó que, tras dicha denuncia, el entonces Director de Seguridad Pública realizó expresiones falsas y difamatorias en su contra y luego se inició un proceso administrativo arbitrario, para la imposición de medidas disciplinarias.[2]

En su reclamación el señor Mercado Vázquez solicitó el pago de $250,000 como indemnización por los daños y perjuicios, alegadamente provenientes de la deshonra, desprecio, privación de la confianza pública, humillación personal, angustias y sufrimientos mentales sufridos. El recurrido solicitó resarcimiento por daños reales sufridos y las angustias mentales, como resultado de un alegado acto de represalia del Municipio, por lo que exigió el doble de la cantidad de daños que según calculó ascienden a la suma de $500,000; y $30,000 por honorarios de abogado.[3]

En respuesta, el 22 de julio de 2021, la parte peticionaria en su contestación, levantó varias defensas afirmativas. Entre estas, alegó que no le adeuda al recurrido las sumas reclamadas en la demanda y que tampoco respondía por el reclamo de daños que se acumuló en la demanda. En la contestación a la demanda se incluyó una reconvención, donde la parte peticionaria, a su vez, presentó dos (2) causas de acción.[4]

Posteriormente, el 29 de noviembre de 2023, la parte peticionaria presentó una *Solicitud de Sentencia Sumaria* en la que, entre otros

---

[2] *Véase* Entrada Núm.1 de SUMAC TPI en el caso CT2021CV00064
[3] *Véase* Entrada Núm.1 de SUMAC TPI en el caso CT2021CV00064.
[4] *Véase* Entrada Núm. 14 de SUMAC TPI.

señalamientos, solicitó la desestimación sumaria de la Demanda presentada por el recurrido.[5] Allí adujo que los hechos del caso comenzaron el 23 de abril de 2020, cuando el señor Mercado Vázquez se personó al Centro de Diagnóstico y de Tratamientos ("CDT") del municipio de Cataño para realizarse una prueba rápida de COVID-19 y que una vez allí, y contrario a lo que alega en la Demanda, el señor Mercado Vázquez acompañado de otros ocho (8) policías, acorraló e increpó al Sr. Collazo sobre la alegada falta de protocolo en el municipio de Cataño. Según el Municipio, en dicho incidente el recurrido le faltó el respeto al Sr. Collazo, diciéndole: "bomberito", que "lo hacía responsable si le pasaba algo a mi familia e hijos…", que "él era un coordinador que él no era el jefe de la Policía para dar órdenes directas a la policía municipal", y se insubordinó. Sostuvo el Municipio que por esta discusión iniciada por el propio recurrido, y ante su conducta irrespetuosa, el Sr. Collazo le contestó al Sr. Mercado Vázquez "yo no soy como tú, que se lleva las armas perdidas de los puntos de droga" y que tras el incidente, el señor Mercado Vázquez se dirigió al cuartel de la policía estatal en Cataño para querellarse en contra del Sr. Collazo alegando alteración a la paz y difamación; que esta querella no procedió pero que ese mismo día, el Tte. Torres, quien presenció los hechos, redactó un informe detallando lo acontecido y reportó el incidente a su supervisor y Jefe de Operaciones.[6]

Finalmente en su solicitud de sentencia sumaria el Municipio arguyó que contrario a las alegaciones esbozadas por el Sr. Mercado en su Demanda, la evidencia presentada demuestra que no existe controversia en cuanto a los hechos materiales y medulares que conducen a establecer la verdad sustantiva en este caso, a saber: (1) La expresión realizada por el Sr. Collazo no constituye difamación por no ser falsa; (2) Tampoco se hizo con malicia real; (3) El Sr. Mercado no sufrió daños a su reputación a partir de las expresiones realizadas por el Sr. Collazo; (4) El municipio autónomo de

---

[5] *Véase* Entrada Núm. 90 de SUMAC TPI.
[6] *Id.*

Cataño no responde en una acción por el supuesto acto constitutivo de difamación de su agente o funcionario pues existe una excepción de ley; (5) El Sr. Mercado no fue objeto de represalias; (4) Las condiciones de empleo del Sr. Mercado no cambiaron; (5) El Sr. Mercado siempre se mantuvo en su puesto y con su sueldo a pesar de la suspensión de labores preventiva y provisional; (5) La suspensión sumaria del Sr. Mercado fue válida, preventiva, provisional y fundada en la Orden General 2018-02, fuente de derecho que lo permite; (6) La querella administrativa presentada en contra del Sr. Mercado fue válida y fundada en los actos irrespetuosos e insubordinados llevados a cabo por el Sr. Mercado, el 23 de abril de 2020, al amparo de la Orden General 2018-02, la cual lo ordena; (7) La investigación administrativa en contra del Sr. Mercado y los otros ocho (8) policías fue válida y necesaria a partir de los hechos acaecidos el 23 de abril de 2020; (9) Ninguno de los codemandados incurrieron en actos culposos o negligentes al efectuar la suspensión sumaria, querella e investigación administrativa del Sr. Mercado. Por ende, el pleito debe de ser desestimado en su totalidad mediante el mecanismo sumario establecido en la Regla 36 de Procedimiento Civil, *supra*.[7]

La parte peticionaria presentó, además, ante el TPI *Moción* una *Informativa* sobre presentación por correo electrónico de *exhibits* por problemas técnicos para anejar los exhibits 2-9 y presentar los exhibits 1, 17, 31, 32, 34 y 35 al correo electrónico de sumacbayamón@poderjudicial.pr y en la alternativa, solicitaron una prórroga de cuarenta y ocho (48) horas para presentar los anejos mediante moción suplementaria.[8]

Mediante Orden de 29 de noviembre de 2023, notificada el 30 de noviembre de 2023, el TPI concedió al recurrido el término de diez (10) días para presentar su posición.[9] En igual fecha, el TPI emitió una orden, notificada el 1 de diciembre de 2023 en la que concedió a la parte peticionaria una prórroga de cuarenta y ocho (48) horas para presentar

---

[7] *Id.*
[8] *Véase* Entada Núm. 91 de SUMAC TPI.
[9] *Véase* Entrada Núm. 92 de SUMAC TPI.

moción suplementaria con todos los anejos descritos en la referida moción informativa.[10]

Simultáneamente, el 29 de noviembre de 2023, el Municipio presentó una *Moción en Solicitud de Desestimación de las Causas de Difamación, Libelo y Calumnia contra el Municipio de Cataño*, fundamentada en que la ley prohíbe que se presenten reclamaciones sobre daños y perjuicios en contra de los municipios por actos u omisiones de un funcionario, agente o empleado si dicho acto u omisión es constitutivo de calumnia, libelo o difamación.[11]

El 8 de diciembre de 2023, la parte peticionaria presentó una *Moción en Cumplimiento de Orden* en la que informó que el 1 de diciembre de 2023, había presentado físicamente ante la Secretaria del foro primario copia de la Solicitud de Sentencia Sumaria junto con los Exhibits.[12] En lo pertinente a la solicitud de sentencia sumaria, mediante Orden de 8 de diciembre de 2023, notificada el 12 de diciembre de 2023, el TPI dio por cumplida su orden emitida el 30 de noviembre de 2023.[13]

El 20 de diciembre de 2023, la parte peticionaria presentó *Moción para que se dé por Sometida la Solicitud de Sentencia Sumaria sin Oposición.*[14] En igual fecha, el recurrido presentó una *Oposición a Moción de Solicitud de Sentencia Sumaria y Réplica a Solicitud para que se dé por Sometida la Sentencia Sumaria sin Oposición* en la que alegó que las partes no habían culminado el descubrimiento de prueba. [15] Al día siguiente, el 21 de diciembre de 2023, el foro primario emitió una orden en la que concedió al recurrido el término final de diez (10) días para presentar su posición con relación a la solicitud de sentencia sumaria.[16]

Tras varios incidentes procesales, el 26 de enero de 2024, el recurrido presentó su *Oposición a Solicitud de Sentencia Sumaria.*[17] En esencia,

---

[10] *Véase* Entrada Núm. 93 de SUMAC TPI.
[11] *Véase* Entrada Núm. 89 de SUMAC TPI.
[12] *Véase* Entrada Núm. 95 de SUMAC TPI.
[13] *Véase* Entrada Núm. 98 de SUMAC TPI.
[14] *Véase* Entrada Núm. 99 SUMAC TPI.
[15] *Véase* Entrada Núm. 100 de SUMAC TPI.
[16] *Véase* Entrada Núm. 102 de SUMAC TPI.
[17] *Véase* Entrada Núm. 14 de SUMAC TPI.

expuso que la reclamación judicial presenta elementos subjetivos de intención, por lo que es improcedente el mecanismo procesal de sentencia sumaria para la adjudicación del caso.[18]

El 11 de junio de 2024, la parte peticionaria presentó *Moción Reiterando que se Resuelvan las Mociones Dispositivas Pendientes de Resolución antes de la Conferencia con Antelación al Juicio.* [19]

Así las cosas, mediante Orden de 20 de junio de 2024, notificada el 21 de junio de 2024, el foro primario dejó sin efecto el señalamiento de la Conferencia con Antelación al Juicio pautada para celebrarse para el 10 de septiembre de 2024 hasta resolver las mociones dispositivas sometidas.[20]

Mediante *Resolución* de 6 de mayo de 2025, notificada al día siguiente, el foro primario declaró *No Ha Lugar* a la solicitud de sentencia sumaria presentada ante dicho foro por la parte peticionaria. Concluyó que, había ausencia de certeza sobre todos los hechos en controversia por lo que era improcedente utilizar el mecanismo procesal de sentencia sumaria para resolver la reclamación presentada en contra de la parte peticionaria.[21] En dicha *Resolución* el foro primario determinó como hechos incontrovertidos los siguientes:

**HECHOS INCONTROVERTIDOS**

1.    El Sr. Omar Mercado Vázquez es mayor de edad, casado, fungió como sargento, y es actualmente, teniente de la policía municipal de Cataño.

2.    El Municipio Autónomo de Cataño es una entidad jurídica del gobierno local, subordinada a la Constitución de Puerto Rico y sus leyes, representada por su actual alcalde, Hon. Julio Alicea Vasallo.

3.    El Sr. Javish Collazo Fernández es mayor de edad, casado, fungió como Director de Seguridad Pública del municipio de Cataño y es actualmente Director del Negociado de Bomberos de Puerto Rico.

4.    El Sr. Edwin Rivera Martínez es mayor de edad, casado, fungió como Comisionado de la Policía Municipal de Cataño y, actualmente, se encuentra retirado.

5.    El Sr. Juan J. Torres González es mayor de edad, soltero y funge como teniente en la Policía Municipal de Cataño.

6.    El Sr. Luis A. Acosta Alago es mayor de edad, casado y funge como sargento de la Policía Municipal de Cataño.

---

[18] *Id*,
[19] Entrada Núm. 31 de SUMAC TPI.
[20] *Véase* Entrada Núm. 132 de SUMAC TPI.
[21] Entrada Núm.135 de SUMAC TPI en el caso Civil Núm. CT2021CV00064.

7. El 20 de marzo de 2020, el Tte. Eliezer Vargas de Jesús completó un reporte titulado "Informe Diario del Supervisor", notificando a varios supervisores de la Policía Municipal de Cataño, sobre el estado de emergencia decretado en el municipio de Cataño, y las nuevas medidas para prevenir y controlar la diseminación del Covid-19 adoptadas. El documento fue firmado por el Sgto. Omar Mercado Vázquez.

8. El 23 de abril de 2020, el señor Mercado fue citado por sus superiores en el empleo al CDT de Cataño, para realizarse una prueba rápida de COVID-19.

9. Posteriormente, el señor Mercado fue directo al cuartel de la policía estatal, distrito de Cataño, para querellarse en contra del señor Collazo, por difamación y alteración a la paz.

10. Por los motivos expuestos en este informe, el 27 de abril de 2020, el Jefe de Operaciones de Campo, Sgto. Carlos Rivera Merced, refirió para investigación administrativa al señor Mercado, al igual que a los otros ocho (8) policías involucrados, acorde con la Orden General Núm. 2018-02 de la Policía Municipal de Cataño, mediante carta dirigida al Director de Investigaciones Especiales, Sgto. Luis A. Acosta Alago.

11. El 28 de abril de 2020, el señor Mercado fue suspendido sumariamente de empleo, más no de sueldo, mientras se realizaba el proceso de investigación administrativa.

12. El 7 de mayo de 2020, el demandante presentó formalmente, por conducto del Lcdo. Gabriel J. Sicardó Ocasio, Director de Asuntos Legales del municipio autónomo de Cataño, una querella titulada: "Comportamiento inapropiado del Señor Javish Collazo".

13. El 21 de mayo de 2020, el Comisionado Edwin Rivera Martínez acude al cuartel estatal de Cataño, para realizar una investigación, sobre unas expresiones hechas en las redes sociales realizadas por unos empleados civiles: el señor Alfredo Pérez, y el señor Mercado.

14. La Orden Interna 2019-02 del municipio, estableció que quedaba "prohibido el publicar en las redes sociales o cualquier otro medio, expresiones públicas que afecten la imagen e integridad del Cuerpo de la Policía Municipal de Cataño y/o al Municipio." Esto es así, ya que conforme a dicha orden esta conducta "propende a conflictos internos que afectan la moral del Cuerpo y crean una imagen pública que perjudica nuestra efectividad a la hora de brindar nuestros servicios." Por lo tanto, el incumplimiento de esta orden daría lugar a medidas disciplinarias.

15. Durante el curso de la investigación administrativa en contra del señor Mercado y los demás policías envueltos, el 15 de junio de 2020, el Pol. Paniagua compareció libre y voluntariamente a la oficina del Sgto. Acosta, donde este le informó del proceso investigativo.

16. El Pol. Paniagua interpretó que el Sgto. Acosta actuó de forma impropia, por expresarle que conocía del caso y solicitarle que dijera la verdad durante la investigación. Incluso, el Pol. Paniagua admitió que interpretó lo anterior como si estuviese solicitándole que dijera mentiras. Esto surge, debido a que el Pol. Paniagua pensaba que, a partir de lo que le indicaban otros compañeros, el Sgto. Acosta y el señor Collazo, les gustaba hacer "chanchullos". No obstante, el Pol. Paniagua reconoció que desconocía si lo que le comunicaban sus compañeros era cierto o falso.

17. El 8 de julio de 2020, el Sgto. Luis Acosta le remitió al Señor Mercado un documento titulado "Me Propongo a Querellado" informándole sobre las alegaciones imputadas en su contra como haber realizado actos de insubordinación e indisciplina, empleando

fuerza o violencia, perturbando la tranquilidad pública, amenazando de emplear tal fuerza o violencia, entre otras faltas al reglamento.

18. Durante la investigación administrativa, y luego de que el demandante fuese citado a declarar, el 8 de julio de 2020, el señor Mercado se negó a prestar una declaración, sobre los hechos suscitados, el 23 de abril de 2020.

19. El 17 de julio de 2020, el Sgto. Luis A. Acosta Alago emitió el informe investigativo titulado "Investigación Administrativa v. Sgto. Omar Mercado Vázquez, y otros", el cual contenía: fundamento de la querella, prueba de cargo, prueba de descargo, análisis de la prueba, hallazgos, conducta repetitiva y conclusión.

20. El señor Mercado fue reintegrado a sus funciones como policía, luego de recibir una orientación.

21. El 27 de diciembre de 2021, el señor Mercado fue evaluado para ascenso a partir de la recomendación realizada por el Tte. Eliezer Vargas De Jesús.

22. El 28 de diciembre de 2021, el Hon. Alcalde del Municipio de Cataño, Julio Alicea Vasallo, le notificó al señor Mercado que efectivo el 1 de enero de 2022, se le otorgaría un ascenso al rango de Teniente de la Policía Municipal de Cataño.

23. Con posterioridad a los hechos de la demanda, el señor Mercado fue ascendido al puesto de Jefe de Operaciones de Campo, luego ejerció sus funciones como Director de Manejo de Emergencias y Emergencias Médicas y, actualmente, funge como el Supervisor General de la Policía Municipal de Cataño.

24. La Oficina del Comisionado de la Policía Municipal de Cataño "es la unidad responsable de la Planificación, Coordinación y Organización, así como de la dirección y control del Cuerpo de la Policía Municipal".

25. La responsabilidad de la División de Investigaciones Especiales de la Policía Municipal de Cataño es, entre otras, "a) [i]nvestigar querellas que surjan contra el personal de la Policía o del servicio, teniendo informado en todo momento al Hon. Alcalde y al Comisionado.

26. La autoridad superior "en cuanto a la dirección de la Policía Municipal residirá en el Hon. Alcalde, y delegará la administración y dirección inmediata de la organización al Comisionado".

27. El Comisionado de la Policía Municipal de Cataño tiene la facultad, previa aprobación del alcalde, para "suspender temporalmente, de empleo, a cualquier miembro de la Policía Municipal, mientras se practica cualquier investigación que se ordenare relativa a la incompetencia, mala conducta o crimen de que se acuse a dicho miembro de la Policía. En tal caso, el Comisionado hará que se formulen los correspondientes cargos, sin demora innecesaria. Investigará y resolverá tales casos a la mayor brevedad posible, lo presentará al Alcalde, quien impondrá el castigo que estime razonable".

28. En el municipio de Cataño se estableció la Orden General Núm. 2018-02, identificada como "Organización de la División de Investigaciones Especiales y Normas, Procedimientos para la Investigación de Querellas a Nivel Administrativo", con el propósito de procurar "la investigación objetiva e imparcial que garantice y proteja los intereses de todas las partes envueltas en la controversia conforme al ordenamiento jurídico vigente que rige el procedimiento administrativo en las agencias gubernamentales".

29.    Conforme a la Orden General Núm. 2018-02, una investigación formal podrá ser ordenada por cualquiera de las siguientes personas: "1. Alcalde; 2. Comisionado; 3. Jefe de Operaciones de Campo; 4. Jefe de Seguridad Pública; 5. Director Recursos Humanos; 6. Director de Servicios Legales".

30.    Las investigaciones administrativas en la Policía Municipal de Cataño podrán ser iniciadas a los cinco (5) días laborales en que tuvo conocimiento de los hechos, siempre y cuando el Departamento de Justicia o el Negociado de Investigaciones Especiales (NIE), no haya iniciado su propia investigación, sobre dicha actuación.

31.    El 18 de febrero de 2022, el Ayudante Especial del Municipio Autónomo de Cataño, Honoris M. Machado Márquez, emitió una certificación negativa, indicando que "luego de una búsqueda en nuestros archivos hago constar que no existe comunicación alguna por parte del Departamento de Justicia de Puerto Rico en relación a una querella presentada en el año 2020, ni años subsiguientes, por el Sgto. Omar Mercado Vázquez.

32.    Durante los procedimientos para realizar investigaciones administrativas: "i. El Querellado deberá presentar toda aquella prueba o evidencia testifical, documental y objetiva (real) de carácter exculpatoria que conozca y tenga disponible a los fines de evitar que se someta al rigor del procedimiento administrativo en su contra".

33.    "El retiro de querellas por parte de Testigos, o la negación de estos en declarar deber ser mirado con cautela y suspicacia. La falta de interés del perjudicado o testigo, quien sea, no impedirá que se continúe investigando el caso, si la naturaleza del mismo lo amerita".

34.    El señor Mercado, como miembro de la Policía Municipal de Cataño, tiene el deber de regirse "por los principios de jerarquía y de subordinación. El personal de la policía debe ejecutar las órdenes dadas por sus superiores".

35.    La Policía Municipal de Cataño tiene una política en contra de las represalias, a partir de la Orden General Núm. 2018-01, titulada "Para la Prevención de Discrimen y Represalias de la Policía Municipal de Cataño", la cual establece un procedimiento para las querellas de represalia en el municipio. Esta Orden delimita ejemplos de represalias contra empleados de la Policía Municipal de Cataño, lo cual incluye, sin limitarse a las siguientes:

a. La expulsión, descenso de rango, negar un ascenso o promoción.
b. Negar beneficios marginales, baja de sueldo, intimidación o coacción
c. Cualquier otra acción que desalentaría a una persona razonable el denunciar o prevenir una conducta impropia, de cooperar en una investigación o procedimiento y/o de oponerse a cumplir una orden ilegal.

De igual forma en la *Resolución* interlocutoria de 6 de mayo de 2025, notificada el 7 de mayo de 2025,   el foro primario determinó que los siguientes hechos estaban en controversia:

**CONTROVERSIAS DE HECHOS**

1.    Si una vez llegó al CDT, el señor Mercado se dirigió hacia el Jefe de Seguridad Pública, el señor Javish Collazo Fernández, para cuestionarle sobre los protocolos con respecto al COVID19.

2.     Si cuando el señor Mercado se acercó hacia el señor Collazo fue acompañado de varios policías municipales de Cataño, quienes hicieron una rueda alrededor del señor Collazo. Si en el lugar se encontraban presentes los siguientes policías, Carlos Cruz Ruiz, Javier Martell Vega, Daniel Reyes Colón, Carlos González Paniagua (Pol. Paniagua), Javier Mojica Meléndez y Francisco Vázquez García.

3.     Si, en ese momento, el señor Mercado procedió a expresarle al señor Collazo:

> "Te responsabilizo, te hago a ti responsable de lo que le pase a mis hijos, a mi esposa, lo que me pase a mí en mi casa, y a los policías municipales. Tú eres un irresponsable, tú no sabes lo que estás haciendo. Tú no tienes cabeza. Ni tú, ni el Alcalde saben qué carajo están haciendo aquí en el Municipio. Ustedes no tienen idea de este protocolo, este cuartel hay que cerrarlo. Esto no puede seguir así."

> Si el señor Collazo le respondió: "Sargento, déjeme explicarle el protocolo que se ha establecido". Si el señor Mercado le repitió que "lo hacía responsable si le pasaba algo a mi familia e hijos…". Si, también, lo llamó "bomberito" y se encontraba molesto. Si al igual que le expresó que él abusaba de su poder para crear miedo, pero "yo no le tenía miedo… yo sabía cuáles eran mis derechos." Si, ante esto, el señor Collazo volvió a explicarle sobre el protocolo vigente, del cual fue orientado. Si el señor Mercado le expresó que "él era un coordinador que él no era el jefe de la Policía[sic] para dar órdenes directas a la policía municipal. Si el señor Mercado continuó con una actitud desafiante y le dijo al señor Collazo: "Tú sabes lo que tú eres, tú eres un cabrón, y contigo no voy a bregar", "[t]ú lo que eres un bombero de mierda". Si, en ese momento, el señor Collazo llamó al Sgto. Rivera para informarle lo que ocurría. Si poco después, llegó el Sgto. Rivera acompañado del Tte. Torres y observaron lo que sucedía.

4.     Si durante esa discusión, ante las expresiones ofensivas del señor Mercado, el señor Javish Collazo le dijo: "Yo podré ser muchas cosas, pero yo nunca voy a ser como tú, que vas a los puntos de drogas a buscar pistolas perdidas de los compañeros".

5.     Si el señor Collazo fue informado de ese hecho "por el pasado Comisionado de la Policía Municipal, Edwin Rivera, el Sargento Luis Acosta, y el mismo Policía Luis Collazo, que fue la persona que se le perdió el arma de reglamento en ese momento". Si la investigación sobre el arma perdida era de conocimiento en el cuartel.

6.     Si, incluso, en relación con la investigación del arma perdida, existe un informe con fecha del 24 de julio de 2017, preparado por la Sgto. María L. González Collazo de Investigaciones Especiales, titulado "Investigación Administrativa vs. Pol. Luis Collazo Rodríguez #145", Caso 17-PM-01-006, del cual se desprende que "…la propiedad en cuestión una pistola Glock, […] misteriosamente fue entregada por un supuesto ciudadano en el área de la Barriada de Juana Matos al Sgto. Omar Mercado Vázquez #8-122, y el mismo se acogió al derecho de no declarar por lo tanto no pudo explicar a esta investigadora la recuperación de esa arma de reglamento del Querellado".

7.     Si el mismo día del incidente en el CDT, 23 de abril de 2020, el Tte. Torres, luego de presenciar los hechos, preparó un informe titulado "Informe Diario del Supervisor". Si en el mismo detalló cada uno de los incidentes de ese día. Si de este se desprende que cuando el Tte. Torres llegó al lugar observó que el señor Mercado se encontraba alterado, con actitud hostil y vociferaba palabras

ofensivas como "usted aquí no es nadie", "mama bicho", "se te acabó el abuso bombero de mierda".

8.      Si, una vez allí, el Tte. Torres tuvo que ordenar a los policías que se encontraban presentes que se retiraran a sus labores. Si incluso, la situación fue tan grave que hubo personal que tuvo que intervenir con el señor Mercado para que no escalara la situación. Si el Tte. Torres le ordenó que se hiciera la prueba. Si, no obstante, el señor Mercado hizo caso omiso y se fue del CDT, sin haberse realizado la prueba.

9. Si, a pesar de lo anterior, el señor Mercado admitió en su deposición que ningún compañero le ha indicado hasta el día de hoy que lo ve de una forma distinta a causa de las expresiones realizadas por el señor Collazo. Si, incluso, los compañeros de trabajo del demandante aún le tenían mucho respeto, y todos los días recibía "llamadas de consuelo de compañeros", en las que le decían, por ejemplo, "no te preocupes, estamos contigo".

10.     Si el Tte. Torres resaltó en su informe que varios de los policías que se habían reportado enfermos procedieron a comparecer al cuartel estatal junto al señor Mercado y, por lo tanto, interpretó que fingieron enfermedad, al igual que pudo personalmente observar que se encontraban o se veían en un buen estado de salud. Si, por todo lo anterior, el Tte. Torres recomendó y solicitó una investigación administrativa de los hechos descritos en su informe.

11.     Si el Sgto. Carlos Rivera Merced determinó que el Tte. Torres era un querellante, a partir del informe que redactó el teniente el día de los hechos.

 12.     Si el 18 de mayo de 2020, el municipio de Cataño comenzó una investigación sobre la reclamación extrajudicial, presentada por el señor Mercado, en contra del municipio y otros funcionarios, a partir de los hechos alegados, entre los días 23 y 28 de abril de 2020.

13.     Si, en esa misma fecha, el Sgto. Acosta supo de las expresiones impropias realizadas por el señor Mercado, en sus redes sociales, a partir de su segunda entrevista con el Tte. Torres, el 18 de mayo de 2020, como parte del curso de su investigación administrativa.

14.     Si, según surge del informe investigativo, el señor Mercado realizó manifestaciones impropias utilizando lenguaje denigrante en contra de funcionarios de agencias del municipio de Cataño. Si, es decir, "[c]omentarios dirigidos a la difamación y denigración de las agencias que representan el buen nombre del Municipio de Cataño.

15.     Si el 3 de junio de 2020, el Sgto. Luis A. Acosta Alago solicitó una copia certificada de un disco conteniendo información sobre las manifestaciones del señor Mercado en su cuenta personal de Facebook, a la Sgto. Loyda De Jesús del Negociado de la Policía de Puerto Rico, ya que las mismas estaban relacionadas al incidente del 23 de abril de 2020.

16.     Si el Tte. Torres no fue informado por el Comisionado, sobre la querella realizada, en contra del señor Mercado, por el uso de las redes sociales, ni tampoco discutió los detalles con él.

17.     Si el señor Collazo tampoco tenía conocimiento de que el Comisionado presentó una querella en contra del señor Mercado, por sus expresiones en las redes sociales. Si tampoco fue informado de los detalles de la investigación realizada en contra de los demás policías envueltos. Si al igual que, tampoco tenía conocimiento del resultado de la investigación administrativa en contra del señor Mercado.

18. Si, por lo anterior, el Sgto. Acosta informó al Pol. Paniagua de su "derecho a no declarar, y de estar representado por abogado y si optaba por declarar libre y voluntariamente y cooperaba habiéndome dicho la verdad de lo ocurrido, se realizaría las recomendaciones para que la autoridad nominadora a la hora de adjudicar y/o recomendar sanciones por las faltas cometidas fuera indulgente con su persona. De igual manera inculque si había sido coaccionado por algún miembro de la agencia para que no declarara. Posteriormente se retiró".

19. Si, posteriormente, el 19 de junio de 2020, el Pol. Paniagua compareció a su cita programada, para declarar sobre la investigación en curso, acompañado de la Lcda. Rivera, quien manifestó, para la sorpresa del Sgto. Acosta, "que su cliente no iba a declarar ya que lo había coaccionado indebidamente y de manera ilegal". Si el Sgto. Acosta nunca le dijo al Pol. Paniagua lo que tenía que declarar.

20. Si el Sgto. Acosta relató en su informe investigativo que "para que hubiese ocurrido una coacción indebida y/o ilegal de mi parte el día en que acudió a mi oficina el Pol. Carlos González debió de haber declarado y yo haberle tomado su declaración y eso no ocurrió. Si el querellado nunca me declaró ese día. Por ende, no puede haber existido una coacción indebida de mi parte".

21. Si el 30 de junio de 2020, el Sgto. Luis A. Acosta Alago le informó al señor Edwin Rivera Martínez, que el Sgto. Javier Mojica Meléndez estaba citado para comparecer a la oficina de investigaciones especiales, en calidad de querellado, por lo cual, compareció acompañado de la Lcda. Maraliz Rivera Gutiérrez e informó que la abogada ejerció presión sobre su persona para inhibirse de la investigación, amenazando con que tenía denuncia en el Negociado de Investigaciones Especiales para que se viese obligado a autoinhibirse.

22. Si el 7 de julio de 2020, el exalcalde del municipio de Cataño, señor Félix D. Delgado Montalvo, ordenó una investigación minuciosa sobre la querella y solicitud de investigación presentada por el Pol. Carlos González Paniagua, en contra del Sgto. Luis A. Acosta Alago.

23. Si el 15 de julio de 2020, la Policía Municipal de Cataño, certificó no haber recibido ninguna querella, queja o denuncia de parte del personal, ni policías municipales, ni ningún supervisor, en cuanto a la forma o manera en que la Policía Municipal ha trabajado las medidas de seguridad y protección durante la emergencia del Covid-19.

24. Si como parte del proceso investigativo, todas las entrevistas de los testigos y querellados fueron realizadas por escrito, informándoles sobre la confidencialidad de la investigación.

25. Si el 20 de julio de 2020, el señor Edwin Rivera remitió una carta al exalcalde del municipio de Cataño, señor Félix D. Delgado Montalvo, donde sometió una copia del expediente investigativo, relacionado con la querella administrativa en contra del señor Mercado. Si, a partir de la investigación documental y testifical contenida en el expediente, concluyó que el señor Mercado cometió varias faltas graves al Reglamento de la Policía Municipal de Cataño, y órdenes administrativas de la agencia, por lo cual recomendó su expulsión permanente del Cuerpo de la Policía Municipal de Cataño.

26. Si, no obstante, y a pesar de la recomendación del Comisionado de la Policía Municipal de Cataño, el 23 de febrero de 2021, el señor Félix D. Delgado Montalvo, optó por enviarle al señor Mercado una amonestación escrita identificada como "Orientación", indicando que el municipio de Cataño "ha determinado no formularle cargos por los hechos aquí reseñados. Con esta acción le estamos

dando la oportunidad de evidenciar su compromiso con el Cuerpo de la Policía Municipal de Cataño".

27.    Si el señor Mercado nunca visitó ningún psicólogo o psiquiatra a causa de los hechos de la demanda.

28. Si el Sgto. Acosta nunca recibió copia de querella alguna, presentada en su contra, ante el NIE, por alegada coacción ni fue investigado, al respecto.

29. Si las órdenes generales y reglamentos aquí mencionados fueron aprobados y puestos en vigor por el Comisionado.

A base de las anteriores determinaciones de hechos, el foro primario concluyó que existen controversias de hechos en el caso, por lo que debían dilucidarse en un juicio en su fondo. En vista de lo anterior, el TPI declaró *No Ha Lugar* la *Solicitud* de *Sentencia Sumaria*, presentada por la parte peticionaria y ordenó la continuación de los procedimientos.

En desacuerdo, el 21 de mayo de 2025, la parte peticionaria presentó una moción de reconsideración ante el TPI.[22] Tras varios incidentes procesales, el 8 de octubre de 2025, el foro primario emitió y notificó orden en la que declaró No Ha Lugar a la solicitud de reconsideración presentada por la parte peticionaria, sobre la denegatoria a su solicitud de sentencia sumaria.[23]

Inconforme, la parte peticionaria recurre ante nos mediante el recurso de epígrafe y señala la comisión de los siguientes errores por parte del foro primario:

A. ERRÓ Y ACTUÓ DE FORMA ULTRA VIRES EL TPI AL ADJUDICAR LA SOLICITUD DE SENTENCIA SUMARIA SIN JURISDICCIÓN SOBRE LA MATERIA RESPECTO A LAS CAUSAS DE ACCIÓN DE DIFAMACIÓN, LIBELO Y CALUMNIA.

B. ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL DECLARAR NO HA LUGAR LA SOLICITUD DE SENTENCIA SUMARIA Y DECLARAR EN CONTROVERSIA HECHOS NO INCONTROVERTIDOS Y/O QUE FUERON ESTIPULADOS CONFORME DISPONE LA REGLA 36.3 (C) Y (D) DE PROCEDIMIENTO CIVIL.

C. ERRÓ EL TPI AL NO DESESTIMAR TODAS LAS CAUSAS DE ACCIÓN PRESENTADAS CONTRA LOS CODEMANDADOS EN SU CARÁCTER PERSONAL POR DEJAR DE EXPONER UNA RECLAMACIÓN QUE JUSTIFIQUE LA CONCESIÓN DE UN REMEDIO.

---

[22] *Véase* Entrada Núm. 136 de SUMAC.
[23] Entrada Núm. 166 de SUMAC TPI.

**Mediante *Resolución* emitida y notificada el 5 de noviembre de 2025, concedimos treinta (30) días al recurrido para oponerse al recurso presentado por la parte peticionaria. Transcurrido en exceso el término concedido al señor Mercado Vázquez para presentar su oposición, resolvemos sin el beneficio de su comparecencia.**

**II.**

**A.**

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *IG Builders et al. v. BBVAPR*, supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, supra, a la pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari* bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, pág. 337. Al respecto, la Regla 52.1 de Procedimiento Civil, *supra*, dispone específicamente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el

Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.* Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

A su vez, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia". Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

La precitada regla mandata que, como foro apelativo, evaluemos si alguna de las instancias enumeradas anteriormente es de aplicación a la petición de *certiorari.* De alguna estar presente, podemos ejercer nuestra discreción e intervenir con el dictamen recurrido. Por el contrario, estaremos impedidos de expedir el auto, y por lo tanto deberá prevalecer la determinación del foro recurrido. Los criterios antes transcritos sirven de guía

para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008).

De ordinario, los tribunales apelativos no debemos intervenir con las decisiones discrecionales de un Tribunal de Primera Instancia a menos que se demuestre que dicho foro incurrió en un abuso de discreción, y que nuestra intervención evitaría un perjuicio sustancial. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013). En todo caso, el criterio rector al momento de evaluar si un tribunal ha abusado de su discreción es la razonabilidad de la determinación impugnada, y su fundamento en un sentido llano de justicia. *Id.,* págs. 434-435.

**B.**

La sentencia sumaria es un mecanismo procesal que confiere al juzgador discreción para dictar sentencia sin necesidad de celebrar vista evidenciaria. Véase, *Reyes Sorto et al. v. CIAPR*, 212 DPR 109 (2023); *Meléndez González et al v. M. Cuebas*, 193 DPR 100 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, supra; *Ramos Pérez v. Univisión*, 178 DPR 200 (2010). Este mecanismo está conformado por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.

En el ejercicio de su discreción, el tribunal puede dictar una sentencia sumaria sobre la totalidad de una reclamación o sobre cualquier controversia comprendida en ella, cuando de los documentos admisibles en evidencia que se acompañan con la solicitud o que obran en el expediente del tribunal surge que no existe una legítima controversia de hechos que tenga que ser dirimida en vista evidenciaria y que solo resta aplicar el derecho. *Íd.*; Regla 36.1 de Procedimiento Civil, *supra*. La sentencia sumaria solo debe dictarse cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba. *Ramos Pérez v. Univisión*, supra.

Las Reglas 36.1 y 36.2 de Procedimiento Civil, *supra*, permiten a cualquiera de las partes en un pleito presentar una moción para que se dicte sentencia sumaria a su favor. En lo pertinente, la Regla 36.2 de Procedimiento Civil, *supra*, dispone lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá, a partir de la fecha en que fue emplazada pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

En cuanto al término dispuesto en la Regla 36.2 de Procedimiento Civil, *supra*, es preciso destacar que este se estableció a los fines de no desvirtuar el propósito de la Regla 36 de Procedimiento Civil, *supra*, de aligerar la tramitación de los casos y facilitar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas sobre hechos materiales.

Por otra parte, se ha reconocido que la demandada en un pleito puede también presentar una moción para que se dicte sentencia sumaria a su favor fundamentando su solicitud en que la parte demandante no cuenta con evidencia suficiente para probar su caso. *Rodríguez Méndez et al. v. Laser Eye*, 195 DPR 769, 786 (2016); *Ramos Pérez v. Univisión*, supra, págs. 446-447. Para que el tribunal pueda dictar sentencia sumaria por insuficiencia de la prueba, la parte promovente tendrá que establecer lo siguiente: (1) que no es necesario celebrar una vista evidenciaria; (2) que el demandante promovido no cuenta con evidencia suficiente para probar algún hecho esencial; y (3) que, como cuestión de derecho, procede la desestimación de la reclamación. *Íd.*

En todo caso, para evaluar adecuadamente una solicitud de sentencia sumaria en la modalidad de insuficiencia de la prueba, resulta indispensable que se le haya brindado al promovido una amplia oportunidad de realizar un descubrimiento de prueba adecuado. De hecho, como parte de su carga inicial de la prueba, el promovente de una moción de sentencia sumaria por

insuficiencia de la prueba tiene que probar afirmativamente, que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado, o sea que ha explorado concienzudamente la posibilidad de evidencia admisible. *Íd*.; *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716 (1994).

Es importante puntualizar que, al momento de atender una solicitud de revisión de sentencia sumaria, los foros apelativos estamos llamados a "examinar el expediente de *novo* y verificar que las partes cumplieron con las exigencias" pautadas en las Reglas de Procedimiento Civil. *Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 338 (2021), que cita a *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). En ese proceder, y de encontrar que los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar si el foro primario aplicó correctamente el Derecho. *Fernández-Bernal v. RAD-MAN et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

De igual forma, nuestro Tribunal Supremo ha señalado que  no es aconsejable utilizar el mecanismo procesal de sentencia sumaria cuando existe una controversia respecto a elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y esté en disputa. *Velázquez Ortiz v. Mun. De Humacao*, 197 DPR 656 663 (2017). Además, tampoco es recomendable resolver casos por la vía sumaria cunado estén envueltas cuestiones de interés público. *Jusino et als. v. Walgreens*, 155 DPR 560 (2001).

**III.**

En el recurso de epígrafe, la parte peticionaria impugna la *Resolución* interlocutoria en la que el foro primario rechazó su solicitud de sentencia sumaria y nos invita a revisarla *de novo*; a concluir que, no existe controversia sobre hechos materiales y a concluir que, como cuestión de derecho, procede la desestimación sumaria de la Demanda presentada por el recurrido.

Como cuestión de umbral, destacamos que recae en la sana discreción del foro primario aceptar y evaluar en los méritos, una moción de sentencia sumaria, siempre que entienda que se cumple con el propósito de aligerar la tramitación de los casos y cuando no existen controversias de hechos materiales o elementos subjetivos de intención, que impidan su adjudicación.

Un examen sosegado del expediente del caso ante nuestra consideración y de la determinación recurrida, no arroja error alguno que amerite nuestra intervención. No surge de los autos que el TPI hubiese incurrido en error, prejuicio, parcialidad o que hubiese abusado de su discreción.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, a la luz de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, y en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos abstenernos de ejercer nuestra función revisora y rechazamos intervenir con la determinación del TPI de denegar la solicitud de sentencia sumaria presentada por la parte peticionaria

El foro primario basó sus determinaciones de hechos incontrovertidos y de hechos en controversia, en los argumentos de las partes, la prueba presentada por estas, así como en la documentación disponible en el expediente del caso. Al determinar si existen controversias de hechos que impiden dictar sentencia sumaria, los tribunales están llamados a analizar los documentos que acompañan la solicitud, así como <u>los que obren en el expediente del tribunal</u>. ***Ramos Pérez v. Univisión,*** supra, pág. 216, citando a ***Cruz Marcano v. Sánchez Tarazona,*** supra, pág. 550.

En la *Resolución* recurrida el foro primario plasmó los hechos en controversia que le impidieron disponer sumariamente del caso, los cuales, según su apreciación, atienden asuntos de credibilidad pertinentes a las controversias planteadas por las partes. Consecuentemente, no intervendremos con el ejercicio de la discreción del foro primario de denegar

la adjudicación sumaria del caso de epígrafe en esa etapa de los procedimientos.

**IV.**

Por los fundamentos anteriormente expuestos los cuales hacemos formar parte de esta *Resolución*, denegamos la expedición del auto de *certiorari* solicitado por la parte peticionaria.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones